NEAL A. POTISCHMAN (SBN 254862)
neal.potischman@davispolk.com
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

*Attorneys for Defendants Lucid Group, Inc. (f/k/a Churchill Capital Corp IV), Atieva, Inc., and Peter Rawlinson*

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

AREC D. SIMERI,

Plaintiff,

vs.

CHURCHILL CAPITAL CORPORATION IV, ATIEVA, INC. d/b/a LUCID MOTORS, MICHAEL KLEIN, JAY FARAGIN, and PETER RAWLINSON,

Defendants.

Case No. 2:21-CV-04295-DSF-PD

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY**

Date: October 18, 2021
Time: 1:30 p.m.

Dept.: Courtroom 7D
Judge: Honorable Dale S. Fischer

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1
BACKGROUND ........ 2
A. The Parties........ 2
B. The Earlier-Filed *Phillips* Action ........ 3
C. Plaintiff's Complaint In This Action ........ 4
ARGUMENT ........ 5
I. THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ALABAMA........ 5
A. The "First-to-File" Rule Requires Transfer........ 6
B. No Exception To The "First-To-File" Rule Applies Here........ 7
C. This Case Should Also Be Transferred Under Section 1404(a) ........ 8
II. IN THE ALTERNATIVE, UNDER THE "FIRST-TO-FILE" RULE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE FIRST-FILED *PHILLIPS* ACTION........ 11
CONCLUSION........ 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) .......... 7

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49 (2013) .......... 9

*Booker v. Am. Honda Motor Co.*, 2020 WL 7263538 (C.D. Cal. Oct. 20, 2020) .......... 11

*Calderon v. Cargill, Inc.*, 2013 WL 12205633 (C.D. Cal. Dec. 10, 2013) .......... 6

*Chan v. C&S Wholesale Grocers Inc.*, 2013 WL 12306481 (C.D. Cal. Oct. 11, 2013) .......... 6, 7

*EFG Bank AG v. Lincoln Nat'l Life Ins. Co.*, 2017 WL 5635022 (C.D. Cal. June 8, 2017) .......... 8, 10

*Figueroa v. Autozoners, LLC*, 2019 WL 11023547 (C.D. Cal. Jan. 31, 2019) .......... 11

*Francis v. Bateman Harden, P.A.*, 2011 WL 13223654 (C.D. Cal. Dec. 19, 2011) .......... 2

*In re Genesisintermedia, Inc. Sec. Litig.*, 2003 WL 25667662 (C.D. Cal. June 12, 2003) .......... 10

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503 (C.D. Cal. 1992) .......... 8

*Kelley v. HCR ManorCare, Inc.*, 2017 WL 10441310 (C.D. Cal. Nov. 28, 2017) .......... 5

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237 (9th Cir. 2015) .......... 11

*Landscape Specialists, Inc. v. Nat'l Union Fire Ins. Co. of Pitt.*, 2020 WL 968693 (C.D. Cal. Jan. 8, 2020) .......... 6

*London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) .......... 10

*Mack v. Amazon.com, Inc.*,
2017 WL 8220436 (C.D. Cal. Sept. 19, 2017) .......... 7

*O'Keefe v. Pick Five Imports*,
2018 WL 4944997 (C.D. Cal. June 20, 2018) .......... 11

*Ortiz v. Walmart, Inc.*,
2020 WL 5835323 (C.D. Cal. Sept. 18, 2020) .......... 6

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) .......... 6

*Papaleo v. Cingular Wireless Corp.*,
2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) .......... 9

*Par Inv. Partners, L.P. v. Aruba Networks, Inc.*,
681 F. App'x 618 (9th Cir. 2017) .......... 2

*PETA, Inc. v. Beyond the Frame, Ltd.*,
2011 WL 686158 (C.D. Cal. Feb. 16, 2011) .......... 6, 7

*SEC v. Carrillo*,
115 F.3d 1540 (11th Cir. 1997) .......... 9

*SEC v. Jammin Java Corp.*,
2016 WL 6595133 (C.D. Cal. July 18, 2016) .......... 9

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .......... 8

*Tran v. Third Ave. Mgmt. LLC*,
2016 WL 6828217 (C.D. Cal. Apr. 12, 2016) .......... 5

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .......... 9

*Wasson v. LogMeIn, Inc.*,
2018 WL 6016283 (C.D. Cal. Nov. 2, 2018) .......... 10

**Statutes & Rules**

15 U.S.C. § 78aa ........................................................................................ 9

28 U.S.C. § 1331 ........................................................................................ 9

28 U.S.C. § 1404(a) ........................................................................ 1, 5, 7, 8

Defendants Lucid Group, Inc. (f/k/a Churchill Capital Corp IV) ("CCIV"), Atieva, Inc. ("Lucid"), Michael Klein, Jay Taragin, and Peter Rawlinson (collectively, "Defendants") respectfully submit this memorandum of points and authorities in support of their motion to transfer venue or, in the alternative, stay (the "Motion").

## PRELIMINARY STATEMENT

The Complaint in this action—which was filed on behalf of one of the many thousands of CCIV stockholders—substantially duplicates the parties, claims, and allegations in an earlier-filed, putative class action in which Plaintiff is a potential class member. Separately litigating this action in this District would needlessly burden the judicial system, as well as waste the time and resources of the parties.

Plaintiff, a purported CCIV stockholder, asserts claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with allegedly false and misleading statements concerning a merger, announced on February 22, 2021 and consummated on July 23, 2021, between CCIV, a special purpose acquisition company (or "SPAC"), and Lucid (the "Merger"). Plaintiff's Complaint followed on the heels of—and borrowed liberally from—an earlier-filed complaint in the United States District Court for the Northern District of Alabama (the "*Phillips* Action"). (*See* Ex. A, Compl., *Phillips v. Churchill Capital Corp. IV, et al.*, No. 1:21-cv-00539-ACA (N.D. Ala.) (the "Phillips Complaint" or "*Phillips Compl.*").)[1] The *Phillips* Action was filed on behalf of a putative class of CCIV stockholders of which Plaintiff is a member. Plaintiff's Complaint here asserts the *same* claims, against the *same* Defendants, based on the *same* alleged wrongdoing as in the *Phillips* Action. Accordingly, for the sake of efficiency, to preserve judicial and party resources, and to protect against the risk of inconsistent judgments, Defendants seek to have this action transferred to the Northern District of Alabama pursuant to the "first-to-file" rule and 28 U.S.C. § 1404(a), to be adjudicated alongside

[1] References to "Ex. __" are to the exhibits attached to the Declaration of Neal A. Potischman, filed contemporaneously with this memorandum.

the *Phillips* Action. In the alternative, the Court should stay this action pending resolution of the first-filed *Phillips* Action to avoid the unnecessary duplication of efforts between this action and the *Phillips* Action.

## BACKGROUND[2]

### A. The Parties

Plaintiff alleges that he holds "upwards of $13,000" worth of CCIV common stock, all of which he allegedly purchased "on a number of occasions throughout February 2021." (Compl. ¶ 22.)

Prior to the Merger, Defendant CCIV was a SPAC that raised money from investors for the purpose of engaging in a merger or other transaction. CCIV was a Delaware corporation headquartered in New York, and its shares traded on the New York Stock Exchange (the "NYSE"). (Compl. ¶¶ 6, 8.) CCIV had hundreds of millions of outstanding shares held by individual and institutional investors who resided both inside and outside of the United States: as of March 15, 2021, CCIV had 207,000,000 shares of Class A common stock and 51,750,000 shares of Class B common stock issued and outstanding. (Ex. D, March 15, 2021 Churchill Capital Corp IV Form 10-K at cover page.)

Defendant Michael Klein was CCIV's founder, Chairman of its Board of Directors, and its Chief Executive Officer. (Compl. ¶ 8.)

Defendant Jay Taragin was CCIV's Chief Financial Officer. (Compl. ¶ 9.)

Prior to the Merger, Defendant Lucid was a privately held company that designed and manufactured luxury electric vehicles. Lucid was headquartered in Newark, California. Defendant Peter Rawlinson was Lucid's Chief Executive Officer. (Compl.

[2] The factual background set forth herein is drawn from the Complaint, as well as public court filings from related actions and SEC filings, of which the Court may take judicial notice. *See, e.g.*, *Par Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 F. App'x 618, 620 n.1 (9th Cir. 2017) (taking judicial notice of SEC filings); *Francis v. Bateman Harden, P.A.*, 2011 WL 13223654, at *2 n.1 (C.D. Cal. Dec. 19, 2011) (taking judicial notice of filings in parallel litigation).

¶ 7.)

On July 23, 2021, upon the closing of the Merger, Lucid became a wholly-owned subsidiary of CCIV, and CCIV changed its name to Lucid Group, Inc. (Ex. E, July 26, 2021 Lucid Group, Inc. Form 8-K, at 1.) Thereafter, CCIV was delisted from the NYSE, and Lucid Group, Inc. common shares were listed on The Nasdaq Stock Market LLC under the ticker symbol "LCID." (*Id.* at 17.) Mr. Rawlinson is a director of Lucid Group, Inc. and its Chief Executive Officer and Chief Technology Officer. (*Id.* at 7-8.)

**B. The Earlier-Filed *Phillips* Action**

The *Phillips* Action was filed on April 18, 2021, over a month before the filing of this action, by another purported CCIV stockholder, asserting claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of a putative class of CCIV stockholders who purchased CCIV shares between January 11, 2021 and February 22, 2021. (Ex. A, *Phillips* Compl. ¶ 1.)

The plaintiff in the *Phillips* Action alleges that, prior to the announcement of the Merger, Lucid and Mr. Rawlinson made purportedly false and misleading statements to the market concerning the timing for Lucid to begin producing electric vehicles and the quantity of vehicles Lucid expected to sell in 2021. (*See id.* ¶¶ 23-25.) Specifically, the *Phillips* plaintiff alleges that Mr. Rawlinson allegedly told national media outlets in February 2021 that he wanted to make 6,000 vehicles during 2021 and "was aiming for a spring delivery of [Lucid's] first vehicles." (*Id.* ¶¶ 23-25.)[3]

The *Phillips* Complaint further alleges that market rumors began circulating beginning in January 2021 concerning a potential transaction between CCIV and Lucid, and that none of Defendants corrected those rumors. (*Id.* ¶ 21.) The *Phillips* plaintiff alleges that, based on these rumors, CCIV's stock price increased throughout January

---

[3] Plaintiff alleges that these statements were published online and/or aired on major cable television networks, including Forbes Magazine, CNBC, and Fox Business News. (Compl. ¶¶ 18, 20, 22; Ex. A, *Phillips* Compl. ¶¶ 23-25.) These statements were accordingly available to a nationwide audience, including CCIV stockholders who resided in the Northern District of Alabama.

and February 2021, until February 22, 2021 (the date that the Merger was announced), when CCIV's stock price declined, allegedly causing losses to the putative class of CCIV stockholders. (*Id.* ¶¶ 22, 29, 30.)

On May 6, 2021, the plaintiff in the *Phillips* Action published a notice pursuant to the Private Securities Litigation Reform Act ("PSLRA") alerting prospective class members of the pendency of a class action involving CCIV stockholders. (Ex. F, *Phillips* Action, Dkt. 25-3.) On June 21, 2021, two purported CCIV stockholders moved for appointment as lead plaintiffs. (Ex. G, Docket Sheet, *Phillips* Action, Dkt. 25.) On June 22, 2021, the court in the *Phillips* Action ordered that the plaintiff publish an amended notice advising purported class members that they must file lead plaintiff motions within 60 days of publication of the amended notice, which the plaintiff did on June 29, 2021. (*Id.*, Dkts. 28-29.) The new deadline for filing lead plaintiff motions in the *Phillips* Action is August 30, 2021.

### C. Plaintiff's Complaint In This Action

On May 24, 2021, weeks after the plaintiff in the *Phillips* Action published his PSLRA notice, Plaintiff filed his Complaint in this Court. Based on the allegations of Plaintiff's own Complaint, the only connection to this District, beyond the conclusory and unsubstantiated assertion that a "substantial portion" of the events occurred here (Compl. ¶ 3) is that Plaintiff claims to be a resident of Los Angeles (*id.* ¶ 5). Plaintiff's Complaint is otherwise duplicative of the complaint in the *Phillips* Action—indeed, more than half of the paragraphs in Plaintiff's Complaint are copied nearly verbatim

from the *Phillips* Complaint:[4]

| This Action | *Phillips* Action |
|---|---|
| ¶ 6 | ¶ 6 |
| ¶ 7 | ¶ 7 |
| ¶ 8 | ¶ 8 |
| ¶ 9 | ¶ 9 |
| ¶ 10 | ¶ 10 |
| ¶ 11 | ¶ 11 |
| ¶ 12 | ¶ 12 |
| ¶¶ 13, 14 | ¶ 21 |
| ¶ 15 | ¶ 22 |
| ¶¶ 16, 17 | ¶ 23 |
| ¶ 18 | ¶ 24 |
| ¶¶ 19, 20 | ¶ 25 |

| This Action | *Phillips* Action |
|---|---|
| ¶ 21 | ¶ 26 |
| ¶ 23 | ¶ 27 |
| ¶ 24 | ¶ 28 |
| ¶ 25 | ¶ 29 |
| ¶ 32 | ¶ 34 |
| ¶ 34 | ¶ 31 |
| ¶ 35 | ¶ 32 |
| ¶ 38 | ¶ 19 |
| ¶ 39 | ¶¶ 39, 40 |
| ¶ 44 | ¶ 44 |
| ¶¶ 45, 40 | ¶ 41 |
| ¶ 46 | ¶ 46 |

## ARGUMENT

### I. THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ALABAMA

Courts in this District routinely transfer actions involving securities claims, such as this one, based on the "first-to-file" rule and pursuant to 28 U.S.C. § 1404(a). *See, e.g.*, *Kelley v. HCR ManorCare, Inc.*, 2017 WL 10441310 (C.D. Cal. Nov. 28, 2017) (transferring stockholder derivative action under "first-to-file" rule based on earlier putative federal securities class action); *Tran v. Third Ave. Mgmt. LLC*, 2016 WL 6828217, at *5-6 (C.D. Cal. Apr. 12, 2016) (transferring putative federal securities class

[4] Two additional actions that are also virtually identical to the *Phillips* Action have been filed in federal courts in Indiana (by the same counsel who represent Plaintiff here) and New Jersey: *Slabaugh v. Churchill Capital Corp. IV, et al.*, No. 1:21-cv-01652-SEB-DLP, Dkt. 1 (S.D. Ind., filed June 11, 2021) (Ex. B) (the "*Slabaugh* Action"); and *Arico v. Churchill Capital Corp. IV, et al.*, No. 3:21-cv-12355-ZNQ-LHG, Dkt. 1 (D.N.J., filed June 9, 2021) (Ex. C) (the "*Arico* Action"). Defendants have already filed a motion to transfer the *Slabaugh* Action to the Northern District of Alabama. Defendants have not been served in the *Arico* Action, but anticipate filing a similar motion to transfer that action if and when they are served.

actions pursuant to both "first-to-file" rule and Section 1404(a)). Both the "first to file" rule and Section 1404(a) strongly support transferring this action to the Northern District of Alabama, where the *Phillips* Action is already pending.

### A. The "First-to-File" Rule Requires Transfer

This action should be transferred to the Northern District of Alabama under the "first-to-file" rule, "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The "first-to-file" rule, which requires transfer "to avoid duplicative litigation and to conserve judicial resources," "'should not be disregarded lightly.'" *Ortiz v. Walmart, Inc*., 2020 WL 5835323, at *2 (C.D. Cal. Sept. 18, 2020) (citations omitted).

In considering whether to apply the "first-to-file" rule, courts analyze three factors: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *See Calderon v. Cargill*, *Inc.*, 2013 WL 12205633, at *1 (C.D. Cal. Dec. 10, 2013). Here, all three factors favor transfer.

First, under the "chronology" factor, "[t]he action in the transferee district court must have been filed prior to the action in the transferor district court." *Landscape Specialists, Inc. v. Nat'l Union Fire Ins. Co. of Pitt.*, 2020 WL 968693, at *2 (C.D. Cal. Jan. 8, 2020) (finding "chronology" factor satisfied where first action was filed one month before second action) (citation omitted). Here, the filing of this action post-dated the filing of the *Phillips* Action by more than 30 days.

Second, the "similarity of the parties" also weighs decisively in favor of transfer. The defendants in both the *Phillips* Action and this action are *identical*. Likewise, Plaintiff here is a member of the putative class in the *Phillips* Action. The only difference in parties is the named plaintiff. That distinction, however, is without legal consequence. *See PETA, Inc. v. Beyond the Frame, Ltd.*, 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011). *Chan v. C&S Wholesale Grocers Inc.*, 2013 WL 12306481 (C.D.

Cal. Oct. 11, 2013), is directly on point and instructive. There, the Court transferred three actions brought on an individual basis to the district in which, as here, a first-filed class action was pending, noting that the defendants in the actions were identical and that the individual plaintiffs, as here, would be members of the proposed class. *Id.* at *2-3. The Court reasoned that, "[w]hile the parties are naturally not identical when comparing a class action and individual actions, all parties in the Central District Complaints would be parties in the [class action]. The Court is therefore satisfied that the 'similarity of parties' factor favors transfer here." *Id.* at *2; *see also Mack v. Amazon.com, Inc.*, 2017 WL 8220436, at *2 n.2. (C.D. Cal. Sept. 19, 2017) ("[B]ecause the parties need not be identical, the fact that Plaintiff is also a member of the class in *Rittmann* contributes to the similarity of parties for purposes of the first-to-file rule.").

Third, the "similarity of the issues" likewise weighs decisively in favor of transfer. This factor considers whether the issues in the two cases are "substantially similar." *PETA*, 2011 WL 686158, at *1-2. Here, the issues are *identical*. The legal and factual issues alleged, as well as the causes of action under the Exchange Act, are the same in each of the actions.

**B. <u>No Exception To The "First-To-File" Rule Applies Here</u>**

A court may, in its discretion, decline to apply the "first-to-file" rule based on limited exceptions, including where the filing of the first suit evidences bad faith, the first-filed suit was an anticipatory suit, or if a party has engaged in forum shopping. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). Additionally, courts may look to factors of convenience associated with a motion to transfer under Section 1404(a) (discussed below), although the Ninth Circuit has cautioned that convenience arguments are often better resolved by the court in which the initial action was filed. *Id.* None of these exceptions applies here.

First, this is not a situation involving a "race to the courthouse" as between Plaintiff and Defendants. To the extent that what happened here can even be characterized as a "race"—with this action having been filed weeks later than the

*Phillips* Action—it was a race between multiple plaintiffs, each of whom brought suit against Defendants making overlapping claims in multiple jurisdictions around the country. There is no good reason why Defendants should have to defend, or multiple federal courts should have to decide, the *same* factual and legal issues concerning the *same* claims. The "first-to-file" rule was created to address exactly this type of duplicative filing.

Second, the convenience factors under Section 1404(a) do not warrant a departure from the normal application of the "first-to-file" rule. As set forth below, this District has no substantial connection to the instant litigation. Plaintiff accordingly cannot show that his personal convenience as a purported resident of this District outweighs the substantial inconvenience and waste of time, money, and judicial resources from litigating the *same* claims in multiple fora on parallel tracks. (*See* Point C, *infra.*)

**C. <u>This Case Should Also Be Transferred Under Section 1404(a)</u>**

This case should also be transferred under Section 1404(a), which provides: "For the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *EFG Bank AG v. Lincoln Nat'l Life Ins. Co.*, 2017 WL 5635022, at *2 (C.D. Cal. June 8, 2017) (internal quotation marks and citations omitted). "To support a motion for transfer the moving party must show that: (1) venue is proper in the transferor district; (2) the transferee district is one where the action might have been brought; and (3) the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). The decision whether to transfer is discretionary: Section 1404(a) permits a "flexible and individualized analysis" in which the issues may be considered on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

With respect to the first two factors, venue is proper in both this District and the Northern District of Alabama under Section 27 of the Exchange Act, given that the alleged misstatements were communicated on a nationwide basis. *See* 15 U.S.C. § 78aa. In addition, both this District and the Northern District of Alabama have personal jurisdiction over Defendants because Defendants reside or are headquartered in the United States. *See SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *7 (C.D. Cal. July 18, 2016) ("For claims under the Securities Exchange Act, personal jurisdiction lies in any district court so long as a defendant has minimum contacts with the United States.") (alteration in original and internal quotations omitted); *SEC v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) (finding that the "applicable forum for minimum contacts purposes is the United States"). And both this District and the Northern District of Alabama have subject matter jurisdiction over the controversy because it arises under federal law. *See* 28 U.S.C. § 1331. Accordingly, venue is proper in this District (Section 1404(a)'s first factor), and the Northern District of Alabama is a forum where this action "might have been brought" (Section 1404(a)'s second factor). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 57 (2013) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 623-24 (1964)).

With respect to the third factor, transfer to Alabama would avoid duplicative litigation and, thus, serve the convenience of the parties and witnesses and promote the interests of justice. Federal courts in California consider a number of factors when considering whether transfer will be more convenient, chief among them, the convenience of the witnesses. *Papaleo v. Cingular Wireless Corp.*, 2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) (noting "with respect to the convenience of third-party witnesses, which often is the most significant factor, the Court finds transfer would be substantially more convenient for each such witness, because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings"). Here, the focus of each of the related actions is the conduct and knowledge of Defendants, their employees, and their advisors. Requiring Defendants

and third-party witnesses to travel to both Alabama and California (and, potentially, Indiana and New Jersey) for court appearances, potentially sit for multiple depositions, or respond to multiple subpoenas, document requests, and potential motions, would substantially increase the costs of litigation for Defendants, their employees, their advisors, and other third parties. It would also substantially increase the risk of inconsistent rulings on any of the relevant issues.

Transfer is also in the "interest of justice," which is sufficient to warrant transfer, even putting aside the convenience factors. *See, e.g.*, *London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co*., 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996) ("The 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way."); *In re Genesisintermedia, Inc. Sec. Litig.*, 2003 WL 25667662, at *4 (C.D. Cal. June 12, 2003) ("courts are to consider whether a transfer would avoid duplicative litigation and prevent waste of time and money . . . this prong of the analysis may be determinative"); *Wasson v. LogMeIn, Inc.*, 2018 WL 6016283, at *4 (C.D. Cal. Nov. 2, 2018) ("Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.") (internal quotation marks omitted and citations omitted). There is no reason why Defendants should be made to defend, and multiple federal courts should be asked to decide, the same claims under the federal securities laws relating to the same alleged wrongdoing. As stated in *EFG Bank AG*:

> Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid duplicitous litigation and inconsistent results. . . . Accordingly, the question for the Court is not whether this action would be more conveniently litigated in the alternative forum, but whether it would be more convenient to litigate the two actions separately or in a coordinated fashion.

2017 WL 5635022, at *3 (alteration in original omitted) (internal quotation marks and citations omitted). Thus, the "pendency of a similar action is sufficient for the transfer analysis 'because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties.'" *O'Keefe v. Pick Five Imports*, 2018 WL 4944997, at *5 (C.D. Cal. June 20, 2018) (citation omitted).

## II. IN THE ALTERNATIVE, UNDER THE "FIRST-TO-FILE" RULE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE FIRST-FILED *PHILLIPS* ACTION

In the alternative, the Court should stay this action during the pendency of the first-filed *Phillips* Action. Under the "first-to-file" rule, courts have the power "to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc*., 787 F.3d 1237, 1239 (9th Cir. 2015). Courts utilize the same three-factor analysis in the stay context as in the transfer context. *Id.* at 1240.

In determining whether to grant a stay under the "first-to-file" rule, "courts should be driven to maximize 'economy, consistency, and comity.'" *Id.* (affirming stay of action where similar action previously filed in another district court) (citations omitted); *see also Figueroa v. Autozoners, LLC*, 2019 WL 11023547, at *2 (C.D. Cal. Jan. 31, 2019) (staying action in favor of first-filed related action, and holding that "[e]fficiency is lost, and judicial resources are wasted where multiple actions, comprised of substantially similar claims and parties, continue simultaneously") (internal quotation marks and citation omitted). Here, as discussed in Point I.A *supra*, the "first-to-file" rule clearly applies to this action and, thus, if the Court were to decide not to transfer this action to the Northern District of Alabama, it should instead grant a stay pending the disposition of the *Phillips* Action. Allowing this action and the *Phillips* Action to proceed simultaneously, when they consist of identical claims brought by similarly-situated stockholder plaintiffs against the same defendants, would be "inefficient and could result in 'the embarrassment of conflicting judgments.'" *Booker*

*v. Am. Honda Motor Co*., 2020 WL 7263538, at *4 (C.D. Cal. Oct. 20, 2020) (granting motion to stay in favor of a first-filed action) (internal quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, this action should be transferred to the Northern District of Alabama under the "first-to-file" rule or Section 1404(a), to be adjudicated alongside the *Phillips* Action. In the alternative, this action should be stayed during the pendency of the *Phillips* Action.

Dated: August 5, 2021

/s/ DRAFT
CHARLES W. COX (SBN 162854)
charles.cox@alston.com
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-3004
Telephone: (213) 576-1048
Facsimile: (213) 576-1100

-and-

/s/ DRAFT
NEAL A. POTISCHMAN (SBN 254862)
neal.potischman@davispolk.com
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

-and-

JOHN A. NEUWIRTH (*pro hac vice* forthcoming)
john.neuwirth@weil.com
JOSHUA S. AMSEL (*pro hac vice* forthcoming)
joshua.amsel@weil.com
EVERT J. CHRISTENSEN (*pro hac vice* forthcoming)
evert.christensen@weil.com
AMANDA K. POOLER (*pro hac vice* forthcoming)
amanda.pooler@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Michael Klein and Jay Taragin*

BRIAN M. BURNOVSKI (*pro hac vice* forthcoming)
brian.burnovski@davispolk.com
DANIEL J. SCHWARTZ (*pro hac vice* forthcoming)
daniel.schwartz@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Ave.
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Defendants Lucid Group, Inc. (f/k/a Churchill Capital Corp IV), Atieva, Inc., and Peter Rawlinson*

**Filer's Attestation**: Pursuant to Local Rule 5-4.3.4(a)(2)(i) regarding signatures, Neal A. Potischman hereby attests that all other signatories listed concur in the content of this document and have authorized its filing.

/s/ DRAFT
Neal A. Potischman