# Exhibit A

EXHIBIT A
PAGE 3

FILED
2021 Apr-19  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **RANDY PHILLIPS,** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| | ) **Jury Trial Demanded** |
| **CHURCHILL CAPITAL CORPORATION** | ) |
| **IV, ATIEVA, INC. d/b/a LUCID MOTORS,** | ) |
| **MICHAEL KLEIN, JAY FARAGIN, and** | ) |
| **PETER RAWLINSON** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Randy Phillips ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Churchill Capital Corporation IV ["CCIV" or "Company"] and Atieva, Inc. d/b/a Lucid Motors ["Lucid"] analysts' reports and advisories about the companies and their pending merger, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Churchill Capital Corp IV securities between January 11, 2021 and February 22, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Companies and certain of their top officials.

## JURISDICTION AND VENUE

2. The claims alleged herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5)

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District. Pursuant to CCIV's most recent annual report on Form 10-K, as of March 15, 2021, there were 207,000,000 shares of Class A common stock, $0.0001 par value and 51,750,000 shares of Class B common stock, $0.0001 par value, issued and outstanding. CCIV's common stock trades on the New York Stock Exchange ("NYSE"). Accordingly, there are presumably hundreds, if not thousands, of investors in CCIV's common stock located within the U.S., some of whom undoubtedly reside in this Judicial District.

## PARTIES

5. Plaintiff, Randy Phillips, purchased shares of CCIV common stock, as set forth in the accompanying certification, which is incorporated by reference herein, and has been damaged thereby.

6. CCIV is a blank check company, also known as a special purpose acquisition company ("SPAC"). A special purpose acquisition company (SPAC) is a company that you can buy stock in that doesn't have an underlying business. SPACs raise money that's then used to buy a private company, effectively taking that company public while avoiding the traditional IPO process. CCIV was formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. CCIV is a "shell company" as defined under the Exchange Act because it has no operations and nominal assets consisting almost entirely of cash. CCIV's executive offices are located at 640 Fifth Avenue, 12th Floor, New York, NY 10019.

7. Lucid is an American automotive company specializing in electric cars. The company was founded in 2007 by CEO Peter Rawlinson, and is based in Newark, California. As of 2020 its first car, Lucid Air, is in development.

8. Defendant, Michael Klein, is the Founder, Chairman, CEO and Director of CCIV. He is also the founder and managing partner of M. Klein and Company, which he founded in 2012. In April 2020, Klein launched CCIV, which raised $2,070,000,000 billion in its IPO and is listed on the New York Stock Exchange (NYSE: "CCIV").

9. Defendant, Jay Taragin, is CCIV's Chief Financial Officer. On February 22, 2021, Taragin signed off on the Agreement and Plan of Merger by and among Churchill Capital Corp IV

and Lucid. Taragin also signed the Company's Annual Form 10-K Report for the fiscal year ended December 31, 2020 filed on March 15, 2021 ("FY 2020 10-K") as the Company's Chief Financial Officer.

10. Defendant, Peter Rawlinson, is Lucid's Chief Executive Officer. Lucid is an American automotive company specializing in electric cars. The company was founded in 2007, and is based in Newark, California. As of 2020 its first car, Lucid Air, is in development. On February 22, 2021, signed the Agreement and Plan of Merger by and Churchill Capital Corp IV and Lucid.

11. Defendants Klein, Taragin and Rawlinson are collectively referred to herein as the "Individual Defendants."

12. The Individual Defendants, because of their positions within CCIV and Lucid, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. By reason of their management positions and their ability to make public statements in the name of CCIV and Lucid, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) CCIV and Lucid to engage in the conduct complained of herein.

## CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all those who purchased or otherwise acquired publicly traded Canoo common stock and/or warrants from January 11, 2021, through and including February 22, 2021. Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the

Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

14. The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impracticable. Throughout the Class Period, CCIV common stock and warrants were actively traded on the NYSE. Although the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members of the Class who traded the Company's common stock and warrants during the Class Period.

15. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants violated federal securities laws based upon the facts alleged herein;

(b) Whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management;

(c) Whether the Individual Defendants caused CCIV and Lucid to issue false and misleading statements during the Class Period;

(d) Whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(e) Whether the prices of CCIV common stock and warrants during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

(f) Whether the members of the Class have sustained damages and, if so, the proper measure of damages.

5

16.     Plaintiff's claims are typical of the claims of the members of the Class as Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal laws as complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

18.     A class action is superior to alternative methods for the fair and efficient adjudication of this controversy since joinder of all members of this Class is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

19.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     CCIV common stock and warrants are traded in an efficient market;

(d)     the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NASDAQ and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(g)  Plaintiff and members of the Class purchased, acquired and/or sold CCIV securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or
misrepresented facts.

20. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## MATERIALLY FALSE & MISLEADING STATEMENTS

21. At market close on January 8, 2021[Friday], CCIV was trading at $10.03 a share. On January 11, 2021, Bloomberg News reported the following: "Electric vehicle maker Lucid Motors Inc. is in talks to go public through a merger with one of Michael Klein's special purpose acquisition companies, according to people familiar with the matter. A transaction could be valued at up to $15 billion, the people said, asking not to be identified because the matter is private. Lucid, which is backed by Saudi Arabia's sovereign wealth fund, is working with financial advisers, the people added. The talks are ongoing but could still fall apart. Representatives for Lucid Motors and Klein declined to comment. A former Citigroup Inc. rainmaker, Klein has two SPACs that are on the hunt for deals. Churchill Capital Corp IV -- the largest one, having raised more than $2 billion last year -- is the vehicle considering a deal with Lucid, some of the people said. Klein has played a prominent role in guiding the kingdom's investments, serving as an adviser to its Public Investment Fund. Among other deals, he advised on the Saudi Aramco initial public offering. Churchill Capital Corp IV jumped as much as 40% in New York trading Monday."[1] At the close of business on January 11, 2021, CCIV's share price was $13.20.

---

[1] https://www.bloomberg.com/news/articles/2021-01-11/lucid-motors-said-to-be-in-talks-to-list-via-michael-klein-spac

**EXHIBIT A
PAGE 10**

22. By January 22, 2021, the price per share of CCIV had risen to $22.35 due to leaks and rumors regarding a pending merger with Lucid.[2] Writers from various news organizations reported that a deal was near completion, and that a merger was imminent.

23. On February 4, 2021, Rawlinson told Forbes magazine the following: "Rawlinson wants to make at least 6,000 Airs at a new plant in Casa Grande, Arizona, this year, potentially generating $900 million of revenue. Volume could top 25,000 units in 2022 as versions of Air priced at $77,000 arrive. Further growth is expected with the 2023 introduction of an electric crossover, tentatively named Gravity, followed by even cheaper and smaller models to compete with Tesla's top-selling Model 3."[3] On February 4, 2021, CCIV's shares closed at $30.22.

24. On February 5, 2021, Lucid Motors CEO Peter Rawlinson appeared on CNBC Friday morning with Jim Cramer and David Faber, sharing his thoughts on his company, plans for growth the electric vehicle market and rumors of a SPAC deal.[4] CCIV share price closed at $34.65 after Rawlinson's comments.

25. On February 16, 2021, Rawlinson appeared on Fox Business News with Neil Cavuto touting that Lucid was aiming for a spring delivery of its first vehicles.[5] In the interview no mention was made of any impediments to the stated delivery time-frame. At the end of this same day

---

[2]https://investorplace.com/2021/01/cciv-stock-lucid-motors-spac-merger-rumors-send-churchill-capital-climbing-again/

[3]https://www.forbes.com/sites/alanohnsman/2021/02/04/elon-musks-ex-chief-engineer-creates-a-new-car-and-says-it-beats-tesla/?sh=262bc0f05b2e

[4]https://www.cnbc.com/video/2021/02/05/watch-cnbcs-full-interview-with-lucid-motors-ceo-peter-rawlinson.html

[5]https://video.foxbusiness.com/v/6232730504001#sp=show-clips

CCIV's stock price closed at $52.70 and by Thursday February 18, 2021 had reached an all-time high of $58.05.

26. On Monday, February 22, 2021, the long anticipated merger agreement between CCIV and Lucid was announced. CCIV's and Lucid's transaction equity value was estimated at $11.75 billion. CCIV's share price closed at $57.37.

## THE TRUTH EMERGES

27. At 6:22 p.m. that same night, Ed Ludlow of Bloomberg News reported that Lucid CEO Rawlinson announced that production of its debut car will be delayed until at least the second half of 2021, with no definite date for set for actual delivery of an actual vehicle.[6]

28. Details of the merger also disclosed that Lucid was projecting the production of only 557 vehicles in 2021, instead of the 6,000 it had been touting in the run-up to the merger announcement.[7]

29. Between the January 11, 2021 Bloomberg article and the official announcement of the merger on February 22, 2021 CCIV stock rocketed from $10 to $57, or 470%.

30. On February 23, 2021, following the merger and never before revealed information from Rawlinson, the stock plummeted to $35.21, a 38% decline. As of April 18, 2021, CCIV was trading at $19.52 a share, a 66% decline from its February 22, 2021 high. Investor Place analyst Matt McCall said CCIV still remains overvalued after a 60% plunge.

---

[6] https://twitter.com/EdLudlow/status/1364216096249630720

[7] https://www.lucidmotors.com/investors/

## ADDITIONAL SCIENTER ALLEGATIONS

31.     The Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

32.     The Individual Defendants were motivated to materially misrepresent the true nature of the Company's business, operations, and financial affairs to the public and regulators in order to keep the Company's share price artificially high.

## LOSS CAUSATION / ECONOMIC LOSS

33.     During the Class Period, as detailed herein, the Individual Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's common stock and warrant prices, and operated as a fraud or deceit on acquirers of the Company's common stock and warrants. As detailed above, when the truth about the Company's financial situation was revealed, the Company's common stock and warrants declined as the prior artificial inflation came out of its common stock price. That decline in Company's common stock and warrant prices was a direct result of the nature and extent of the fraud finally being revealed to investors and the market.

34.     The timing and magnitude of the common stock and warrant prices decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the fraudulent conduct. The economic loss, i.e., damages, suffered by the Plaintiff and other Class

members was a direct result of the fraudulent scheme to artificially inflate the Company's common stock and warrant prices and the subsequent significant decline in the value of the Company's common stock and warrants when the prior misrepresentations and other fraudulent conduct were revealed.

35. At all times relevant, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading because they failed to disclose a true and accurate picture of the Company's business, operations and financial condition, as alleged herein.

36. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Company's common stock and warrant prices to be artificially inflated.

37. These revelations contradicted statements made by Defendants during the Class Period, and revealed information omitted by Defendants during the Class Period, and were thus a causal element of the concurrent decline in the Company's share price.

38. Plaintiff and other Class members purchased Company's common stock and warrant prices at those artificially inflated prices, causing them to suffer the damages complained of herein.

## NO SAFE HARBOR

39. The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements pleaded in this complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the

extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

40. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements were made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that those statements were false, misleading or omitted necessary information when they were made.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

41. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42. During the Class Period, Defendants CCIV, Lucid and the Individual Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

43. Defendants CCIV, Lucid and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired CCIV's securities during the class period.

44. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's shares. Plaintiff and the Class would not have purchased the Company's shares at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

45. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above that contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their

publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post judgment interest thereon;

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and,

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

*/s/Roderick T. Cooks*
Lee D. Winston
Roderick T. Cooks

*/s/Robert L. Beeman, II*
Robert L. Beeman, II

*Attorneys for the Plaintiff and the Putative Class*

**PLAINTIFF'S ADDRESS:**
Randy Phillips
c/o Lee D. Winston
Roderick T. Cooks
Winston Cooks, LLC
505 20th Street North
Suite 815
Birmingham, AL 35203
Tel:   205-482-5174
Fax:   205-278-5876
Email: lwinston@winstoncooks.com
Email: rcooks@winstoncooks.com

Robert L. Beeman, II
BEEMAN LAW FIRM
P.O Box 253
Helena, Alabama 35080
205.422.9015 (P)
800.693.5150 (F)
rlbsportsmgnt12@att.net

**DEFENDANTS' ADDRESSES:**
Michael Klein
Jay Taragin
Churchill Capital Corp IV
640 Fifth Ave, 12th Floor
New York, NY 10019

Peter Rawlinson
Lucid Motors USA Inc.
7373 Gateway Boulevard
Newark, CA 94560